**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ajman Stud, et al.,<br><br>        Plaintiffs,<br><br>v.<br><br>David Cains, et al.,<br><br>        Defendants. | No. CV-15-01045-PHX-DJH<br><br>**ORDER** |

This case is on remand from the Ninth Circuit to determine two questions related to Plaintiffs' attorneys' fees awards. The Court is first asked to reconsider the amount of fees it awarded to Plaintiffs following judgment, and specifically whether, despite Plaintiff's counsel's averment to the contrary, the award included fees for work done on another, related matter. (Doc. 212-1). The Court is also asked to determine the amount of fees to award Plaintiffs on appeal and similarly consider whether any fees related to the same other matter should be included in the fee award. (Doc. 217).

**I.    Background**

In 2015, Plaintiffs Sheikh Ammar Bin Humaid Al Nuaimi and Ajman Stud ("Plaintiffs") filed suit against Defendants David Cains, Scott Bailey, and Stonewall Farms Arabians LLC ("Defendants") for breach of contract, breach of the covenant of good faith and fair dealing, fraud, conversion, breach of fiduciary duty, and bailment (the "*Ajman Stud* matter"). These claims arose out of Plaintiffs' purchase of an Arabian mare and the subsequent wrongful breeding of the mare by Defendants. On April 13, 2016,

approximately one year after Plaintiffs filed their suit in federal court, Defendants Cains and Bailey filed a defamation lawsuit against two individuals involved in the sale of the mare and who were witnesses in the *Ajman Stud* matter. *Cains v. Grassi*, No. CV16-01306-PHX-ROS (the "*Grassi* matter"). Cains and Bailey alleged that defendants Grassi and Spönle began "making false statements about the Plaintiffs to others in the Arabian Horse Industry," and specifically, that Plaintiffs had "stole[n] horse embryos from Sheikh Ammar." (Doc. 218-6 at 3–4). Plaintiffs' counsel Mr. Michael Carroll defended defendants Grassi and Spönle in that action, which ended on July 10, 2018, when summary judgment was entered in the defendants' favor. *Cains v. Grassi*, 2016 WL 5791535 (D. Ariz. July 10, 2018). Defendants in the *Grassi* matter did not file an application for attorneys' fees. (Doc. 218 at 6).

Unlike the *Grassi* matter, *Ajman Stud* went to a bench trial in 2019, and judgment was entered in favor of Plaintiffs on all the claims except the breach of contract claim. The Court thereafter awarded Plaintiffs $676,235.50 in billed hourly fees. (Doc. 205 at 14). Defendants appealed both the judgment and the attorneys' fees award. On appeal, the Ninth Circuit affirmed all but the judgment against Defendants for breach of fiduciary duty. The court also affirmed the attorneys' fees award, with one caveat. In their opening brief on appeal, Defendants contended that the attorneys' fees awarded by this Court improperly included fees for work performed by Plaintiffs' counsel in the *Grassi* matter, notwithstanding counsel's averment to the contrary in his application. During oral argument, Mr. Carroll acknowledged that some of the fees that were awarded in this matter related to work performed in the *Grassi* case. (Doc. 218 n.3). Accordingly, the Ninth Circuit remanded the case to this Court to determine what fees, if any, were improperly included in the fee award. (Doc. 212-1 at 15).

Following this remand order, Plaintiffs filed a motion with the Ninth Circuit to recover their attorneys' fees on appeal. Defendants did not file a response to that request. Noting that no objection had been filed, the Ninth Circuit Court awarded Plaintiffs their attorneys' fees, but asked this Court to determine the amount, taking into consideration

whether any of the fees requested included fees for work performed in the *Grassi* matter. (Doc. 217).

The Court asked the parties to brief their positions on the remanded issues, and they have done so. (Docs. 218; 219).[1] The Court will first assess whether Plaintiff's counsel improperly included billing entries for work performed in the *Grassi* matter when submitting his attorneys' fees application to this Court, and if so, what adjustments to the award need be made. It will then determine what amount is reasonable to award Plaintiffs for their attorneys' fees on appeal.

## II. Defendants' Objections to Time Billed in *Ajman Stud* for Worked Allegedly Performed in the *Grassi* Matter.

In support of Plaintiffs' Application for Attorneys' Fees to this Court, Mr. Carroll submitted a declaration that in part declared under oath that the "hours, fees or costs itemized and sought in this action do not include fees (or costs) incurred in the related case of *David Cains, Scott Bailey, Stonewall Farms Arabians, LLC; and Knight Media Network v. Elisa Grassi and Frank Sponle*, District of Arizona Case No. CV16-01306-PHX-ROS." (Doc. 143 ¶ 8). In their brief on appeal, Defendants argued that 42 of Mr. Carroll's billing entries do in fact include such fees. (Doc. 218-4 at 5).[2] Defendants specifically argue that in approximately 26 different entries, Mr. Carroll improperly included discovery-related tasks undertaken in *Grassi*, and in 16 different entries, he improperly included work he did on a motion for summary judgment and post-judgment proceedings in the *Grassi* matter. Defendants do not ask that the award be reduced by a specified amount or otherwise add the challenged fees up for the Court. However, Plaintiffs, in their brief to this Court, represent that the challenged entries amount to $14,940 in discovery-related fees and $10,580 in dispositive and post-judgment related fees, for a total of $25,520 of the

---

[1] Given Mr. Carroll's admission during oral argument on appeal, the Court asked the parties to meet and confer about a possible settlement on the challenged entries before submitting briefs on the issues. The parties could not reach agreement.

[2] Defendants raised this issue for the first time on appeal, having not challenged these entries to this Court in their Response in Opposition to Plaintiff's Motion for an Award of Attorneys' Fees and Related Non-Taxable Costs (Doc. 148).

- 3 -

$676,235.50 in awarded fees. Defendants did not challenge this approximation in their responsive brief. Accordingly, the Court will reevaluate these entries and assess whether they were properly included in the fee award.

### A.     Challenged Billing Entries Related to *Grassi* Discovery

Again, the discovery-related entries challenged by the Defendants total 37.75 hours of Mr. Carroll's time at $400.00 per hour, or approximately $14,940 in fees awarded. Mr. Carroll argues that these charges were properly included in the fees awarded "because those legal services were relevant to, necessary for, and used in the adjudication of the identical and intertwined issues in the *Ajman Stud v. Cains* trial . . . ." (Doc. 218 at 5). Specifically, he argues that he billed in *Ajman Stud* for (1) providing discovery responses in *Grassi* because they "were relevant to the gravamen issues" in *Ajman Stud*; (2) reviewing Cains and Grassi's deposition transcripts taken in *Grassi* so he could use them in *Ajman Stud*; (3) issuing subpoenas for business records in *Grassi* so that he could use the documents to evidence bad practices of Defendant Cains; establish Defendants' alter ego status; and establish the pattern of Defendants' fraudulent practices and Defendant Bailey's involvement; and (4) negotiating and drafting a protective order entered in *Grassi* that applied to many documents used at the *Ajman Stud* trial. The crux of Mr. Carroll's argument is that the information obtained in *Grassi* was often relevant to various issues in *Ajman Stud*, and thus he believes he properly billed the time he spent performing those tasks to this matter. The Court finds this position to be overbroad and ethically concerning.

The Court agrees that it would have been proper for Mr. Carroll to include time spent reviewing relevant depositions or documents that were obtained in the *Grassi* matter for purposes of utilizing them in *Ajman Stud.* That is not to say, however, that it was appropriate to include time for tasks that were specifically and originally done for the purpose of defending the *Grassi* matter, e.g., taking or defending depositions in *Grassi*, responding to discovery requests propounded in *Grassi*, or issuing subpoenas in *Grassi.* Upon review of the challenged entries, this is exactly what Mr. Carroll has done.

For example, on March 15, 2017, nearly a year after discovery had closed in *Ajman*

*Stud*, Mr. Carroll spent two hours ($800.00) on the following block-billed tasks: "REVIEW DOCUMENTS; ANALYZE TO DETERMINE IMPACT ON CLIENT INTEREST(S) AND POSITION(S) AND POTENTIAL RESPONSE(S); REVIEW CASE STATUS, DEVELOP CASE STRATEGY/ACTION PLAN FOR DISCOVERY; DRAFTING AND/OR EDITING--DISCOVERY." (Doc. 143-2 at 31). As Defendants correctly note, there would have been no need to develop an action plan for discovery or draft discovery in *Ajman Stud* on March 15, 2017, because discovery had long since closed in that matter. Similarly, on August 6, 2017, over a year after discovery had closed, Mr. Carroll billed three hours ($1,200.00) to "ADVISE CLIENT OF FACTUAL INPUT NEEDED FROM CLIENT OR FOR CLIENT TO OBTAIN FROM THIRD-PARTIES; REVIEW DOCUMENTS; ANALYZE TO DETERMINE IMPACT ON CLIENT INTEREST(S) AND POSITION(S) AND POTENTIAL RESPONSE(S); DRAFTING AND EDITING DISCOVERY RESPONSES; DRAFTING DOCUMENT SUBPOENAS; SEND TO CLIENT(S) TO REVIEW; DISCUSS WITH MBC; DEVELOP RESPONSE AND PROVIDE INSTRUCTIONS TO MBC REGARDING SAME." (Doc. 143-2 at 42). Again, given the procedural posture of this case, any work responding to discovery or issuing subpoenas would have been performed in defending the allegations in *Grassi*, not in prosecuting *Ajman Stud*. The Court highlights these two examples, but has reviewed the 26 entries challenged by Defendants and agrees with Defendants that they appear to include tasks that can only be logically associated with discovery work that was performed in *Grassi*, not *Ajman Stud*.

Again, Mr. Carroll does not dispute the work challenged by Defendants was done for the *Grassi* matter, but instead argues that this time was properly included in his attorneys' fee application in *Ajman Stud* because these tasks ultimately produced information that was helpful to the prosecution of the claims in *Ajman Stud.* Mr. Carroll points to no authority that justifies making Defendants responsible for those fees. He also does not reconcile this position with his averment that the fees he sought in Plaintiffs' application for attorneys' fees did not include fees incurred in *Grassi.* The fact that the

- 5 -

fruit of labors expended in *Grassi* may have resulted in information that was relevant or useful in *Ajman Stud* does not justify Mr. Carroll representing that this time was chargeable to this case. Under these circumstances, the Court finds cause to reduce the fees awarded to Defendants.

### B.     Challenged Billing Entries Related to Summary Judgment and Post-Judgment Work in *Grassi*

The same is true with regard to entries for the summary judgment and post-judgment work Mr. Carroll did in *Grassi*. These 16 challenged entries total 26.45 hours of time at Mr. Carroll's $400.00 per hour case billing rate, or approximately $10,580 in fees sought and awarded. Mr. Carroll argues that "[t]hose time entries were reasonably included in the attorneys' fees sought and received in *Ajman Stud v. Cains* because such work provided the genesis for, and formed the factual evidence 'timing' predicates and legal basis of the Plaintiffs' successful Motion in Limine (Doc. 82) made in this case to 'Exclude Evidence of and Reference to Plaintiffs' Unsuccessful Claims Against Grassi and Spönle in *Cains v. Grassi*."

The Court finds this argument far-reaching and dismisses it entirely. The challenged time entries, which range from March 19, 2018–September 18, 2018, make absolutely no mention of any work performed on the five-page Motion in Limine that was filed in *Ajman Stud* on August 8, 2018. The entries do, however, describe tasks related to a motion for summary judgment, separate statement of facts, and a post-judgment bill of costs, all of which were filed in the *Grassi* matter. For example, Mr. Carroll's billing entry on April 5, 2018, the date on which the defendants in *Grassi* filed their motion for summary judgment (Doc. 73 in *Grassi*) states: "DRAFTING AND/OR EDITING FINAL EDITS TO MPA AND SSOF; LOCAL TELEPHONE CALL TELEPHONE CALL WITH CO-COUNSEL: DISCUSSED PENDING MATTERS AND AGREED UPON ACTION PLAN RE SAME;CONFIRM FILING AND COMPLETENESS." (Doc. 143-2 at 9). Mr. Carroll's billing entry for June 3, 2018, the day before the *Grassi* defendants filed their reply in support of the motion for summary judgment (Doc. 80 in *Grassi*) reads: "REVIEW

DOCUMENTS; ANALYZE TO DETERMINE IMPACT ON CLIENT INTEREST(S) AND POSITION(S) AND POTENTIAL RESPONSE(S); REVIEW CASE STATUS, DEVELOP CASE STRATEGY/ACTION PLAN; LEGAL RESEARCH; DRAFTING AND/OR EDITING REPLY MPA AND REPLY/POOSITION [sic] TO PLTS ALLEHED [sic] PSOF; SEND DRAFT/DOCUMENT TO CO-COUNSEL TO REVIEW/APPROVE/EDIT, DISCUSS/COORDINATE WITH MBC; SEND TO CLIENT(S) TO REVIEW; DISCUSS WITH MBC; DEVELOP RESPONSE AND PROVIDE INSTRUCTIONS TO MBC REGARDING SAME." (Doc. 143-2 at 72). And Mr. Carroll's billing entry for July 20, 2018, days before the *Grassi* defendants filed their Bill of Costs (Doc. 84 in *Grassi*) states: "RECEIVE AND REVIEW EMAIL; ANALYZE IMPACT ON CLIENT INTERESTS AND POSITIONS; DEVELOP RESPONSE; DRAFTING AND TRANSMITTAL OF EMAIL; COLLECT COSTS AND INVOICES FOR COSTS BILL; TELEPHONE CALL WITH CO-COUNSEL: DISCUSSED PENDING MATTERS AND AGREED UPON ACTION PLAN RE SAME; SUPERVISE LEGAL ASSISTANT; PROVIDE INSTRUCTIONS TO, AND CHECK WORK OF LEGAL ASSISTANT RE SAME." (Doc. 164-2 at 75). Mr. Carroll improperly included these *Grassi*-related tasks in his attorneys' fees application and cannot justify their inclusion asserting that they had some tangential relevance to a brief motion in limine filed in *Ajman Stud*. He again cites no authority that would support such a proposition and the Court rejects it outright. The Court similarly finds cause to subtract the fees awarded for these tasks from Plaintiffs' previous fee award.

  **C.** **Reduction of Fee Award for Block-Billed Tasks**

Because these improper *Grassi*-related tasks are block-billed with tasks that are arguably *Ajman Stud*-related, the issue now becomes how to reduce the fee award. The Ninth Circuit allows percentage reduction of attorneys' fees awards where a party block bills, "because block billing makes it more difficult to determine how much time was spent on particular activities." *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 948 (9th Cir. 2007) (noting that a "fee applicant bears the burden of documenting the appropriate hours

expended in the litigation and must submit evidence in support of those hours worked"). *See also Grouse River Outfitters, Ltd. v. Oracle Corp.*, 848 Fed. Appx. 238, 245 (9th Cir. 2021) (reversing district court attorneys' fee award "based largely on block billing where there was significant overlap in time billed for the same work between attorneys and it was difficult to ascertain how much time was spent on specific tasks"); *Sleeth v. Sleeth*, 244 P.3d 1169, 1176 (Ariz. Ct. App. 2010) (noting that Arizona courts are skeptical about block-billing or the practice of "grouping tasks together in a block so that time spent on each task cannot be reviewed for its reasonableness"). In *Welch*, the Ninth Circuit found that a district court's reduction of hours that were billed in block format was proper because the applicant's entries failed to adequately show "how much time was spent on particular activities." *Welch*, 480 F.3d at 948. *But see also id.* (remanding to district court for adjustment where district court applied a 20 percent reduction to *all* of the requested hours instead of just those hours that were block billed).

Pursuant to this authority, the Court finds a percentage reduction in the awarded fees is warranted here. Mr. Carroll has not sufficiently explained to this Court why Defendants in this matter should be ultimately charged with tasks that Plaintiffs' attorney completed to defend a different, albeit related, matter. Although the Court recognizes that some tasks generally described in the block-billed entries at issue may relate to tasks rightly performed in *Ajman Stud* and thus would have been properly submitted with Plaintiffs' attorney fee application, Mr. Carroll's use of block billing makes it impossible for the Court to separate this time out. Under such circumstances, a fixed percentage reduction is appropriate. The Court will reduce the fees previously awarded under the challenged entries, which totaled $25,520.00, by 50%, or $12,760.00. Accordingly, Plaintiffs' award of $676,235.50 in billed hourly fees (Doc. 205 at 14), is **reduced** by $12,760.00, for an amended total of $663,475.50.

/ / /

/ / /

/ / /

- 8 -

### III. Plaintiffs' Attorneys' Fees on Appeal[3]

The Court will next address what amount of attorneys' fees to award Plaintiffs on appeal.

On November 8, 2021, Plaintiffs filed a Request for Attorneys' Fees with the Ninth Circuit, requesting $347,543.31 in fees on appeal. (Doc. 218-1). Plaintiffs seek compensation for the work of two partners, two associates, and one paralegal. Mr. James Armstrong, a partner at Sacks Tierney PA, attests that he had primary responsibility for managing and conducting the defense of the judgment on appeal, and billed 372.8 hours at $480.00, for a total of $178,622.00 in fees. His associate, Mr. Evan Hiller, assisted with research and writing and billed 127.3 hours at $375.00 per hour for a total of $42,673.50. These attorneys were also assisted by a paralegal that billed 3.9 hours at $200.00 per hour for a total of $751.00. Plaintiffs also seek compensation for $5,914.31 spent on Westlaw research. The total amount requested by the Sacks Tierney law firm thus amounts to $222,046.50.

Mr. Carroll, the other partner that worked on Plaintiffs' appeal, assisted with drafting documents, and presented the oral argument on appeal. Mr. Carroll billed 281.50 hours at $400.00 per hour for $112,600.00 in fees. He was also assisted by an unnamed law clerk, who billed 46.9 hours at $125.00 per hour for a total of $5,862.50. Plaintiffs also seek compensation for the $1,120.00 legal research performed by Mr. Carroll and his law clerk. The total award requested by the Carroll Law Offices thus amounts to $119,582.50.

Defendants did not respond to Plaintiffs' Request on appeal. The Request was granted on November 29, 2021, and then remanded to this Court to determine the amount

---

[3] The Ninth Circuit also asked this Court to determine if any fees charged to the *Grassi* matter were included in Plaintiffs' application for fees on appeal. In their briefing, Defendants did not identify any billing entries in Plaintiffs' counsels' records that were *Grassi*-related, and Plaintiffs aver that no work in *Grassi* was included in their appellate fee application. The Court has reviewed the billing entries submitted with Plaintiffs' fee request and finds that none of the entries contain descriptions for fees incurred in *Grassi* in prosecuting the appeal.

of fees to award.[4]  In Defendants' Responsive Brief in Opposition to Plaintiffs' Brief on Remanded Attorneys' Fee Issues (Doc. 219), Defendants do not contest the reasonableness of the hourly rates charged, or generally the number of hours charged by the Sacks Tierney attorneys or staff.  Defendants object only to the number of hours charged by Mr. Carroll on appeal "except for time to prepare for and participate in the oral argument because Sacks Tierney lawyers were responsible for all of the legal research, drafting and editing of the appeal documents . . . and because Mr. Carroll mislead this court in his prior declaration by including time and fees that were incurred in Cains v. Grassi . . .."  (Doc. 219 at 2).  Defendants contend that Mr. Carroll's "intentional false statements taint all of his time entries and render him not credible."  (*Id.*)  Plaintiffs argue that the amount of fees they requested is reasonable "given the unusual complexities created by Defendants' scattershot arguments."  (Doc. 219 at 2).  Plaintiffs point out that "Defendants raised *sixteen* separate issues in their two Opening Briefs, many of which challenging [sic] the voluminous evidentiary support for this Court's comprehensive findings after trial."  (*Id.*) (emphasis in original).[5]

**A.   Analysis**

"Once a litigant establishes entitlement to a fee award, the touchstone under § 12-341.01 is the reasonableness of the fees."  *Assyia v. State Farm Mut. Auto. Ins. Co.*, 273 P.3d 668, 674 (Ariz. Ct. App. 2012).  "The award of reasonable attorney fees pursuant to [§ 12-341.01] should be made to mitigate the burden of the expense of litigation to establish a just claim or a just defense.  It need not equal or relate to the attorney fees actually paid or contracted, but the award may not exceed the amount paid or agreed to be paid."  A.R.S.

---

[4] "Generally, a party that is entitled to an award of attorneys' fees in the district court is also entitled to an award of attorneys' fees on appeal."  *Voice v. Stormans, Inc.*, 757 F.3d 1015, 1016 (9th Cir. 2014).  Defendants do not contest Plaintiffs' eligibility for fees. The only issue before this Court is the reasonableness of the amount requested.

[5] Plaintiffs also argue that Defendants' failure to respond to the Request for Attorneys' Fees precludes them from arguing they are entitled to anything less than a full award of the amount sought therein.  (Doc. 218 at 2).  However, the Ninth Circuit transferred determination of the issue to this Court, and this Court subsequently ordered the parties to brief the same.  The Court will therefore take Defendants' briefing into consideration when determining the reasonableness of the requested fees.

- 10 -

§ 12-341.01(B).

### 1. Reasonableness of Hourly Rates

Here, Defendants do not object to the reasonableness of the billing rates of the attorneys that worked on Plaintiffs' appeal (Doc. 219 at 3). For the same reasons stated in its July 12, 2020, Order awarding Plaintiffs' Attorneys' Fees (Doc. 205 at 9), the Court finds the rates charged by these attorneys and their staff reasonable, and that all counsel in this matter had adequate experience, reputation, and ability.

### 2. Reasonableness of Hours

With regard to the number of hours billed, Defendants initially make a fleeting objection to the fact that "there are times when two [Sacks Tierney] lawyers and a paralegal have a meeting yet they record different time; i.e., October 28, 2019 Armstrong enters .4, Ennslin .3 and Heller .2 for the same meeting." (Doc. 219 at 4). Beyond the October 28, 2019, meeting, Defendants do not specify which other entries may contain these alleged discrepancies, but regardless, the Court declines to reduce the Sacks Tierney fees for this reason. It is entirely reasonable that Mr. Armstrong, who was assigned the primary responsibility for managing and conducting the defense of the judgment on appeal, presided over a meeting for .4 hours in which Ms. Ennslin or Mr. Heller were only present for .3 or .2 hours, respectively. Defendants do not object to any other time billed by the Sacks Tierney firm. The Court finds these hours, totaling $222,046.50, are reasonably compensable.

The Court finds more merit in Defendants' objections to Mr. Carroll's requested fees, which amount to $118,462.50 in charged hourly fees (including his law clerk) and $1,120.00 in research. Defendants argue that Mr. Carroll's fees are excessive and duplicative of the work done by the Sacks Tierney attorneys in light of Mr. Armstrong's certification that he was primarily responsible for the drafting and research of documents on appeal and Mr. Carroll was to be responsible for presenting the oral argument to the Ninth Circuit Court. (Doc. 219 at 2). Defendants argue that their own attorneys worked 398.6 hours and incurred $191,352.00, "which is the equivalent to that billed by

Armstrong," and so awarding Plaintiffs an additional $118,462.50 in fees is excessive. (*Id.*) They also say that "[t]he time entries by Carroll are overly broad, redundant and fail to state what was actually done." (*Id.* at 3). Defendants note that in the time he submitted, Mr. Carroll uses the phrase, "Analyze to Determine Impact on Client's Position/Interests" approximately 100 times to describe the work he is performing. (*Id.*) Defendants argue this stock description insufficiently details the tasks performed so that it may "evaluate the reasonableness of the **time spent on individual tasks**" and is generally a description that makes little sense in the appellate context. (*Id.* at 4). Defendants finally ask the Court to infer nefarious intent on Mr. Carroll's part and charge him with "riding" the file and fabricating time entries. (*Id.* at 5).

"The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992). "Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Moreover, hours "that are excessive, redundant, or otherwise unnecessary" are not compensable. *Id.* at 434. Examination of Mr. Carroll's time entries reveals numerous instances of entries that are not adequately documented.

### i. *Block-billing/Unrelated Tasks in Single Entries*

As with his application for attorneys' fees to this Court, Mr. Carroll's appellate fee application frequently lumps together multiple tasks, making it impossible for this Court to evaluate the reasonableness of tasks on an individual basis. *See In re Olson*, 884 F.2d 1415, 1428–29 (D.C. Cir. 1989) (per curium) (noting that "when an attorney bill[s] for more than one task in a day, the court is left to approximate the amount of time which should be allocated to each. With such inadequate descriptions the court cannot determine with a high degree of certainty, as it must, that the billings are reasonable.") (footnote and internal quotation marks omitted). Indeed, to avoid this problem, Arizona District Court Local Rules require that a party seeking fees submit an "itemized account of the time expended" that details "[t]he time devoted to each individual unrelated task performed on

such day." LRCiv 54.2(e)(1)(B). A review of Mr. Carroll's records reveal, however, that for all days when Mr. Carroll bills more than one task, he fails to note the time spent on each different task. For example, on April 22, 2020, Mr. Carroll bills 2.0 hours for "REVIEW COURT DOCUMENTS; ANALYZE TO DETRERMINE [sic] IMPACT ON CLIENT POSITION/INTERESTS; DEVELOP & CALENDAR POTENTIAL STRATEGY/RESPONSE THERETO-DENIAL OF MOTION TO DISMISS; CALENDAR NEW BRIEFING DATES; REVIEW DOCUMENTS; ANALYZE TO DETERMINE IMPACT ON CLIENT INTEREST(S) AND POSITION(S) AND POTENTIAL RESPONSE(S)-TRIAL TRANSCRIPTS RE RULING ON VARIOUS PRETRIAL MOTIONS; TELEPHONE CALL WITH CO-COUNSEL ARMSTRONG: DISCUSSED PENDING MATTERS AND AGREED UPON ACTION PLAN; DRAFT AND TRANSMIT EMAIL TO CO-COUNSEL." (Doc. 218-1 at Ex. D). Similar problematic block-billing is represented in entries on 2/20/2020 (.2); 3/4/2020 (1.25), 4/1/2020 (1.5), 4/4/2020 (.4), 4/7/2020 (2.75), 4/30/2020 (.4), 5/28/2020 (.75), 6/4/2020 (1.4), 6/8/2020 (2.75), 6/11/2020 (2.0), 6/16/2020 (1.0), 7/20/2020 (.2), 7/22/2020 (1.4), 8/30/2020 (1.0), 8/31/2020 (3.0), 8/31/2020 (1.75), 9/16/2020 (.5), 9/17/2020 (1.25), 9/17/2020 (.8), 9/17/2020 (1.0), 9/18/2020 (.75), 9/18/2020 (1.4), 9/21/2020 (.8), 9/22/2020 (4.0), 9/21/2020 (1.25), 12/22/2020 (2.0), 1/4/2020 (1.0), 2/19/2020 (3.5), 2/22/2020 (2.25), 2/22/2020 (1.8), 2/23/2021 (.2), 4/29/2021 (2.0). These entries total 50.25 hours, or $20,100. By billing unrelated tasks in one block, Mr. Carroll prevents the Court from evaluating whether the time performed on each specific task was reasonable. Accordingly, the Court will apply a 25% reduction, or $5,025.00, to these block-billed hours.

### ii.   *Lack of Specifics in Mr. Carroll's Billing Entries*

The Court also agrees with Defendants' general objection that many of Mr. Carroll's billing entries insufficiently describe tasks that allow the Court to identify and assess whether a reasonable amount of time was spent performing it. Local Rule 54.2(e)(2) requires the moving party to "adequately describe the services rendered so that the

reasonableness of the charge can be evaluated." LRCiv 54.2(e)(2). The Rule states, for example, that telephone conferences must "identify all participants and the reason for the telephone call," and entries for legal research must "identify the specific issue researched and, if appropriate, should identify the pleading or document the preparation of which occasioned the conduct of the research. Time entries simply stating 'research' or 'legal research' are inadequate and the court may reduce the award accordingly." LRCiv 54.2(e)(2)(A),(B).

Here, Defendants attach an exhibit identifying nearly 100 times when Mr. Carroll uses the phrase "Analyze to Determine Impact on Client Position/Interest" to describe a task. (Doc. 219-3 at 1). The Court's own review also reveals that Mr. Carroll repeatedly bills for "Drafting and/or Editing," and "Review Court Documents," often with no specification of what he is drafting, editing, or reviewing. On multiple entries (often included with time in which he would "Analyze to Determine Impact on Client Position/Interest"), Mr. Carroll also bills to "Review Case Status" and/or "Develop case strategy/action plan." Other entries do not make sense to the Court, such as when Mr. Carroll bills to "discuss/coordinate with MBC," which seems to represent that Mr. Carroll is discussing something with himself. The court finds the following time entries are problematic for the reasons stated above: 2/20/2020 (.2), 4/1/2020 (1.5), 4/4/2020 (.4), 4/7/2020 (2.75), 4/22/2020 (2.0), 4/30/2020 (.4), 5/28/2020 (.75), 6/8/2020 (2.75), 6/11/2020 (2.0), 6/16/2020 (1.0), 7/20/2020 (.2), 8/30/2020 (1.0), 8/31/2020 (3.0), 9/16/2020 (.5), 9/18/2020 (1.4), 12/22/2020 (2.0), 1/4/2021 (1.0), 1/29/2021 (.4), 2/22/2021 (2.25), 2/22/2021 (1.8), 2/23/2021 (.2), 4/29/2021 (2.0), 9/28/2021 (.25), 6/9/2020 (1.0). These entries total 30.75 hours of Mr. Carroll's time and amount to $12,300.00. The Court finds these entries lack the required specificity and will accordingly be reduced. The Court will apply a 25% reduction to the noted entries, or $3,075.00, due to the Court's inability to assess the reasonableness of the tasks described.

### *iii.   Excessive Billing*

Finally, Defendants argue that because Mr. Armstrong represented that the Sacks

Tierney attorneys would be primarily responsible for the research and drafting of documents on appeal and that Mr. Carroll was to be responsible for preparing for and delivering the oral argument, all but the time Mr. Carroll spent on preparation and presentation of the oral argument was excessive, duplicative, and appears "fabricated." (Doc. 219 at 3). Defendants argue that "Carroll's time beginning on July 2, 2021 through July 8, 2021 appears reasonable," but the rest is "duplicative of the work done by Sacks Tierney on the appeal." (*Id.* at 4–5).

Plaintiffs correctly note that the Defendants' appeal had "unusual complexities," including that Defendants raised sixteen separate issues in their two opening appellate briefs, many of which challenged the Court's findings on an insufficiency of evidence basis. Moreover, Plaintiffs were therefore not only required to research and draft two answering briefs, but also draft arguments on seven different motions over the course of the two-year appeal. Without more, the Court does not find that Mr. Carroll unreasonably or fraudulently billed time in assisting in the drafting and editing of documents on appeal. As lead trial attorney, and the specialized horse counsel, Mr. Carroll reasonably served as a reference point for drafting and editing certain appellate documents and reviewing drafts written by the Sacks Tierney lawyers. Mr. Armstrong's representation to the appellate court that he was "primarily" responsible for the research and drafting of the appellate issues (Doc. 218-1, Ex. A), did not necessarily mean that Mr. Carroll, as counsel of record, was not also involved in these tasks. Apart from the deficiencies already noted, this Court's review of Mr. Carroll's time entries prior to July 2, 2021, does not show his entries to be patently duplicative of time entered and submitted by either Sacks Tierney attorney. Defendants, notably, do not point to specific entries but only generally object to Mr. Carroll having done any work on the appeal prior to that date. The Court will therefore decline to further reduce the requested award on the grounds that the time spent was excessive, duplicative, or fabricated.

### B. Summation of Attorneys' Fees Award on Appeal

Plaintiffs request $340,509.00 in fees on appeal. Due to the Court's inability to

review certain of Mr. Carroll's time entries for reasonableness, the Court has imposed a flat percentage reduction on some of Mr. Carroll's entries that total $8,100.00. The Court finds that remainder of the requested amount reasonable. Having deducted $8,100.00 from the requested $340,509.00 amount, the Court will award Plaintiffs $332,409.00 in attorneys fees on appeal.

**IV.  Conclusion**

**IT IS ORDERED** that this Court's Attorneys' Fee Order (Doc. 205) and the Clerk's Judgment on Attorneys' Fees (Doc. 206) is hereby **amended** in part to **reduce** the awarded billed hourly fees by $12,760.00, from $676,235.50 to **$663,475.50**.  Plaintiffs are therefore awarded **$663,475.50** in billed hourly fees, **$39,000.00** in expert witness fees, and **$28,121.43** in non-taxable expenses for total amount of **$730,596.93.**  The Clerk of Court shall kindly enter an amended judgment accordingly.

**IT IS FURTHER ORDERED** that Plaintiffs are awarded **$332,409.00** for their billed hourly fees on appeal.  The Clerk of Court shall kindly enter judgment accordingly.

**IT IS FINALLY ORDERED** that this matter shall remain closed.

Dated this 30th day of March, 2022.

Honorable Diane J. Humetewa
United States District Judge